TERRY ROSS, CASB No. 58171
terry.ross@kyl.com
STACEY M. GARRETT, CASB No. 155319
stacey.garrett@kyl.com
CHRISTOPHER R. FARNSWORTH, CASB No. 286992
chris.farnsworth@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California  90801-1730
Telephone:    (562) 436-2000
Facsimile:    (562) 436-7416

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNI

KEVIN J. DUNNE, an individual; and
CATHERINE M. DUNNE, an individual,

                              Plaintiffs,

                vs.

JPMORGAN CHASE BANK, N.A., a
National Banking Association; and
DOES 1 through 100, inclusive,

                              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 13-00919 DDP (OPx)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANT JPMORGAN CHASE
BANK, N.A.'S MOTION TO DISMISS**

Date:    March 31, 2014
Time:    10:00 a.m.
Place:   Courtroom 3, 2nd Floor
         Hon. Dean D. Pregerson

///

///

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................. iii

I.   INTRODUCTION ....................................................................1

II.  ALLEGATIONS OF FACT ......................................................2

    A.   THE DUNNES OBTAINED A CONSTRUCTION LOAN FROM CHASE IN MARCH 2009 ...........................................2

    B.   THE CONSTRUCTION LOAN AGREEMENT. ...................3

        1.   The Dunnes' obligations under the CLA. .....................3

        2.   Chase's obligation to fund Disbursements was expressly conditioned on the Dunnes' satisfaction of all conditions in Section 5 of the CLA. ......................4

        3.   Chase's remedies in the event of the Dunnes' default. ......................................................................5

    C.   THIS IS THE DUNNES' FOURTH ATTEMPT TO STATE A CLAIM AGAINST CHASE .............................................5

III. LEGAL ARGUMENT ..............................................................6

    A.   STANDARD FOR A MOTION TO DISMISS. ...................6

    B.   THE TAC SHOWS THAT THE DUNNES HAVE NOT AND CANNOT PLEAD FACTS ESTABLISHING A CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT ...................................................................6

        1.   Paragraph 29 of the TAC establishes that the Dunnes failed to perform their obligations under the CLA. ...........................................................................7

            a.   The Dunnes cannot rely on inadmissible parol evidence to establish that they were excused from performing their obligations under the CLA. ......................................................................8

            b.   The express terms of the CLA prevent the Dunnes from establishing implied waiver as a matter of law. ..............................................11

        2.   Paragraph 29 of the TAC establishes that the conditions precedent to Chase's obligation to fund Disbursements were not satisfied. ...............................12

        3.   The TAC establishes that Chase did not unfairly interfere with the Dunnes' right to receive the benefits of the CLA. ...............................................13

i

a.   Chase's actions were expressly permitted by the CLA and therefore cannot be a breach of the implied covenant under *Carma Developers*................................................................14

b.   As a result of the Dunnes' Defaults, the Dunnes had no right to Disbursements in any amount.......................................................................16

c.   Chase's reporting of the Dunnes' payment history to credit-rating agencies is not hinged to any express contractual term and is a privileged communication.................................17

4.   The TAC establishes that the Dunnes' alleged "harm" was caused by their own failure to perform under the CLA, not by Chase's conduct. .....................................19

IV.   CONCLUSION..............................................................................20

KYL_LB1706959.v4

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Airs Intern., Inc. v. Perfect Scents Distributions, Ltd.*,
  902 F. Supp. 1141 (N.D. Cal. 1995) ........................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 6

*Barajas v. Countrywide Home Loans, Inc.*,
  2012 U.S. Dist. LEXIS 24237 (C.D. Cal. 2012) .................................... 17

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 6

*Berger v. Home Depot U.S.A., Inc.*,
  476 F. Supp. 2d 1174 (C.D. Cal. 2007) .............................................. 7, 17

*Dumas v. Kipp*,
  90 F.3d 386 (9th Cir. 1996) ...................................................................... 8

*Grant v. Aurora Loan Servs.*,
  736 F. Supp. 2d 1257 (C.D. Cal. 2010) ................................................. 17

*Hawkins v. First Horizon Home Loans*,
  2010 U.S. Dist. LEXIS 124529 (E.D. Cal. 2010) .................................... 2

*Lane v. Vitek Real Estate Indus. Group*,
  713 F. Supp. 2d 1092 (E.D. Cal. 2010) .............................................. 7, 17

*Leghorn v. Wells Fargo Bank, N.A.*,
  950 F. Supp. 2d 1093 (N.D. Cal. 2013) ................................................. 17

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
  2007 U.S. Dist. LEXIS 77132 (S.D. Cal. 2007) .................................. 9, 10

*Morgan v. Aurora Loan Servs., LLC*,
  2014 U.S. Dist. LEXIS 1703 (C.D. Cal. 2014) ...................................... 10

*Nunez by Nunez v. City of San Diego*,
  114 F.3d 935 (9th Cir. 1997) .................................................................. 18

*Rosenberg v. Bank of Am., N.A.*,
  2013 U.S. Dist. LEXIS 40582 (C.D. Cal. 2013) .................................... 10

iii

*Rosenfeld v. JPMorgan Chase Bank*, N.A.,
   732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) ................................................... 6, 12, 13

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................................. 6

*United States v. Grayson*,
   879 F.2d 620 (9th Cir. 1989) ............................................................................... 11

### STATE CASES

*Adams v. Explorer Ins. Co.*,
   107 Cal. App. 4th 438 (2003) ............................................................................. 15

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ............................................................................... 13, 14, 16

*Consol. World Invs., Inc. v. Lido Preferred Ltd.*,
   9 Cal. App. 4th 373 (1992) ................................................................................. 12

*Durrell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ............................................................................. 8

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ....................................................................................... 13

*Hamilton v. Greenwich Investors XXVI, LLC*,
   195 Cal. App. 4th 1602 (2011) ............................................................................. 7

*Janossy v. Wash. Mut. Bank*,
   2002 Cal. App. Unpub. LEXIS 8524, *17–20 (2002) ......................................... 18

*Jenkins v. JPMorgan Chase Bank, N.A.*
   216 Cal. App. 497 (2013) ................................................................................... 13

*Locke v. Mitchell*,
   7 Cal. 2d 599 (1936) .......................................................................................... 18

*Lundquist v. Ruesser*,
   7 Cal. 4th 1193 (1994) ....................................................................................... 18

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
   55 Cal. 4th 1169 (2013) ....................................................................................... 9

*Rufo v. N.B. C. Nat'l Broad. Co.*,
    166 Cal. App. 2d 714 (1959) ................................................................. 19

*Southall v. Sec. Title Ins. & Guarantee Co.*,
    112 Cal. App. 2d 321 (1952) ................................................................. 19

*Waller v. Truck Ins. Exch., Inc.*,
    11 Cal. 4th 1 (1995) ............................................................................. 13

### FEDERAL STATUTES AND RULES

FED. R. CIV. PROC.
    Rule 12(b)(6) ...................................................................................... 6, 7, 9

### STATE STATUTES AND RULES

CAL. CIV. CODE
    § 47(c) .................................................................................................. 18
    § 47(c)(1) ........................................................................................ 14, 18
    § 48 ...................................................................................................... 18
    § 1439 .................................................................................................. 12
    § 1625 .................................................................................................... 9

CAL. CIV. CODE PROC.
    § 1856(a) ............................................................................................... 9

### MISCELLANEOUS

2 WITKIN, SUM. CAL. LAW INSURANCE § 29 ............................................. 15

KYL_LB1706959.v4

1    Defendant JPMorgan Chase Bank, N.A. ("Chase") moves to dismiss Plaintiff
2    Kevin and Catherine Dunne's Third Amended Complaint ("TAC") alleging a single
3    cause of action for breach of the implied covenant of good faith and fair dealing.

4

5                               **I. <u>INTRODUCTION</u>**

6         In March 2009, the Dunnes obtained a $1,000,000 construction loan from Chase
7    to build a home in Topanga Canyon.  Although the Dunnes were required to obtain all
8    necessary construction permits before they committed to the loan and represented to
9    Chase that they had done so, the Third Amended Complaint ("TAC") admits that the
10   Dunnes did *not* have the necessary permits at the time they obtained the loan.  (TAC
11   ¶29.)  Further, although the Dunnes were required to begin construction within 30 days
12   of the loan, the TAC admits that the Dunnes knew before they took the loan that it
13   would take "as many as several months" to begin construction.  (TAC ¶29.)
14        The Dunnes' failure to obtain the construction permits and their
15   misrepresentation to Chase about the permits were events of default under the parties'
16   Construction Loan Agreement ("CLA").  The absence of any default was an express
17   condition precedent to Chase's obligation to fund the Dunnes' loan disbursements.  The
18   TAC therefore conclusively establishes that the Dunnes failed to perform their
19   obligations under the CLA and that the Dunnes failed to satisfy the conditions
20   precedent to Chase's performance, both of which the TAC must do to survive a motion
21   to dismiss.  The Dunnes' defaults entitled Chase to stop funding the loan, accelerate the
22   note and foreclose on the property.  Because Chase's actions were authorized by the
23   CLA, its conduct could not violate the implied covenant of good faith and fair dealing.
24        The Dunnes cannot avoid these deficiencies by relying on oral, pre-contract
25   communications that contradict the terms of written, integrated CLA.  That evidence is
26   barred by the parol evidence rule and cannot excuse the Dunnes' failure to perform.
27        The TAC establishes that the Dunnes have not and cannot state a claim for
28   breach of the implied covenant.  The TAC should be dismissed with prejudice.

KYL_LB1706959.v4

## II. <u>ALLEGATIONS OF FACT</u>

### A.   <u>THE DUNNES OBTAINED A CONSTRUCTION LOAN FROM CHASE IN MARCH 2009.</u>

The Third Amended Complaint alleges the following facts:  Plaintiff Kevin Dunne has been a professional real estate appraiser for 35 years.  (TAC ¶15.)  His wife, Catherine, is a part-time real estate appraiser.  (TAC ¶19.)  The Dunnes began buying properties and building homes for profit in or about 1980.  (TAC ¶20.)  In or around 2005, the Dunnes acquired an undeveloped piece of property located at 21717 Encina Road, Topanga, California.   (TAC ¶¶25 and 26.)  The Dunnes spent three years preparing the Encina Road property for construction.  (TAC ¶27.)

On or about March 18, 2009, the Dunnes obtained a $1,000,000 construction-to-permanent loan from Chase.  (Exhibit 2 to TAC, "Note.")  The purpose of the loan was to fund disbursements for construction of a single-family residence (also called the "Improvements") on the Encina Road property.  (TAC ¶28.)  The Dunnes did not receive the entire loan principal at once.  Instead, the Dunnes submitted periodic "Draw Requests"[1] for construction costs and Chase advanced loan funds to pay for the costs (called "Disbursements.")[2]  The loan was secured by a Deed of Trust in favor of Chase. (Exhibit 3 to TAC, "Deed of Trust.")  On the same day, March 18, 2009, the Dunnes and Chase entered into a Construction Loan Agreement ("CLA") with Chase.  (TAC ¶28 and Exhibit 1 to TAC.)[3]

---

[1] "Draw Requests" is defined at Section 5.2 of the CLA.

[2] "Disbursement" is defined as an advance of any portion of the Loan pursuant to the terms of the CLA.  (CLA §1.2, "Disbursement.")

[3] When a written instrument is attached to the pleading and properly incorporated therein by reference, the court may examine the exhibit and consider its contents in ruling on a motion to dismiss.  *Hawkins v. First Horizon Home Loans*, 2010 U.S. Dist. LEXIS 124529, *27 (E.D. Cal. 2010).

**B.    THE CONSTRUCTION LOAN AGREEMENT.**

> **1.    The Dunnes' obligations under the CLA.**

The CLA set forth the rights and obligations of Chase and the Dunnes regarding the construction loan.  (CLA §1.1)  The CLA expressly required that all of the Dunnes' representations, warranties and covenants in Sections 10 and 11 of the CLA were true and correct in all material respects.  (CLA §5.6.)  The Dunnes made the following representations, warranties and covenants to Chase under Sections 10 and 11 of the CLA:

- That there were no statements, representations or warranties in the CLA that contained any untrue statements of material fact (CLA §10.4);
- That the Dunnes had obtained all permits and approvals necessary to construct the Improvements (CLA §10.5);
- That there were no Defaults under the Loan Documents[4]  (CLA §10.11); and
- That Chase was entitled to assume that the statements, facts, information and representations contained in any document filed by the Dunnes with Chase regarding the loan or and/or construction were true and correct   (CLA §11.10).

The Dunnes and Chase also agreed that time was of the essence in the performance of the parties' obligations under the CLA.  (CLA §15.8.)

One day after Chase and the Dunnes signed the CLA, they modified certain terms of the CLA by signing a "Construction Loan Agreement Addendum and Modification" ("Addendum and Modification") (Exhibit 1 to TAC at p. 36.)  In the

[4] The "Loan Documents" are the Construction Loan Agreement, the Note, the Security Instrument, the Addendum and Modification and any other documents evidencing and/or securing the loan or the procedures related thereto.  (CLA §1.2, "Loan Documents").

Addendum and Modification Agreement, the Dunnes affirmed all of their obligations under the CLA.  (Addendum and Modification, §8.)  The Addendum and Modification Agreement stated that if construction was not completed by the original Completion Date[5] (March 17, 2010) and certain conditions were met, Chase would extend the Completion Date by six months.  (Addendum and Modification, §7.)

## 2.  Chase's obligation to fund Disbursements was expressly conditioned on the Dunnes' satisfaction of all conditions in Section 5 of the CLA.

Chase's obligation to fund Disbursements under the CLA was expressly conditioned on the absence of any Event of Default as defined by Section 12 of the CLA.  (CLA §5.5.)  The CLA defined the following as Events of Default, among others:

- If any representation or warranty set forth in the CLA was not true, or if the Dunnes failed to comply with their obligations to satisfy each of the covenants or obligations in the CLA (CLA §12.4);

- If any of the Dunnes' representations proved to be false or misleading and Chase relied on the representation in making the loan or making Disbursements under the loan (CLA §12.10); and

- If the Dunnes neglected or failed to refused to keep in full force and effect any permit or approval necessary for the construction of the Improvements  (CLA §12.12).

Chase was obligated to fund Disbursements only upon the Dunnes' satisfaction of all of the express conditions in Section 5 of the CLA.  (CLA §6.)

///

---

[5] "Completion Date" is defined as March 17, 2010.  (CLA §1.2, "Completion Date.")

3.     **Chase's remedies in the event of the Dunnes' default**.

If the Dunnes defaulted on any of their obligations under the CLA, Chase was entitled to pursue various remedies, including terminating further Disbursements (CLA §13.1), accelerating the Note (CLA §13.2), and exercising its rights under the Deed of Trust, including foreclosure.  (CLA §13.4.)

Although Chase was entitled to exercise its remedies in the event of the Dunnes' default, it also was entitled to delay or refrain from exercising its remedies without waiving any of its rights.  Specifically, the CLA reserved Chase's right to make Disbursements after an Event of Default without waiving its right to demand full payment of the Note or its right to terminate future Disbursements.  (CLA §13.3.)  The CLA also provided that Chase's delay or omission in exercising any right or remedy arising from a Default would not be construed as a waiver of the Default.  (CLA §15.2.)

**C.     THIS IS THE DUNNES' FOURTH ATTEMPT TO STATE A CLAIM AGAINST CHASE.**

The Dunnes initiated this lawsuit against Chase in California Superior Court on November 2, 2012 alleging causes of action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud and deceit, (4) negligence, and (5) negligent misrepresentation.  The Dunnes filed a First Amended Complaint on January 9, 2013 alleging the same causes of action.  Chase removed the action to this Court on the basis of diversity jurisdiction.  On May 8, 2013, the Dunnes filed a Second Amended Complaint containing the same five causes of action.  On February 13, 2014, the Dunnes filed the TAC.  The only cause of action in the TAC is for "Breach of Contract (Breach of the Implied Covenant of Good Faith and Fair Dealing)."  Thus, the Dunnes do not claim that Chase breached any of the express terms of the Loan Documents, and they have abandoned their claims for negligence, fraud and deceit.

///

# III. <u>LEGAL ARGUMENT</u>

## A.    <u>STANDARD FOR A MOTION TO DISMISS.</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations because "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009), quoting *Twombly*, 550 U.S. at 555.  Furthermore, a court is not required to credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Likewise, the court need not accept allegations as true if they are contradicted by documents before the court. *Id.*

## B.    <u>THE TAC SHOWS THAT THE DUNNES HAVE NOT AND CANNOT PLEAD FACTS ESTABLISHING A CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT.</u>

The factual elements necessary to establish a breach of the covenant of good faith and fair dealing are:  (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. *Rosenfeld v. JPMorgan Chase Bank*, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council of California Civil Jury Instruction ("CACI") No. 325)).  Where the plaintiff fails to allege facts establishing all of the elements of a cause of action for breach of the implied covenant, dismissal is appropriate under

KYL_LB1706959.v4

Federal Rule of Civil Procedure 12(b)(6).  *Id.* at 968–969; *see also Lane v. Vitek Real Estate Indus. Group,* 713 F. Supp. 2d 1092, 1102 (E.D. Cal. 2010) (implied covenant claim dismissed under Rule 12(b)(6)); *Berger v. Home Depot U.S.A., Inc.,* 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (same).

Although the TAC alleges that the Dunnes and Chase entered into several contracts, the TAC itself establishes that the Dunnes have not and cannot plead a cause of action for the remaining elements of a cause of action for breach of the implied covenant of good faith and fair dealing.

### 1.    Paragraph 29 of the TAC establishes that the Dunnes failed to perform their obligations under the CLA.

To state a claim for breach of the implied covenant, the Dunnes must allege facts establishing that they fulfilled their obligations under the CLA or were excused from doing so.  *Rosenfeld at 968; see also* CACI No. 325(2).  Failure to allege facts establishing that the plaintiff performed his obligations under the contract requires that a cause of action for breach of contract be dismissed.  *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011).

Here, Paragraph 29 of the TAC pleads facts establishing that at the time the Dunnes obtained the construction loan, they did not have the necessary permits to begin construction, and they knew it would take "as many as several months" to obtain the permits to begin construction.  (TAC ¶29.)  Paragraph 29 therefore conclusively establishes that Dunnes failed to perform at least the following obligations under the CLA:  (1) the obligation to obtain and maintain the permits necessary for construction (CLA §10.5 and §12.12), and (2) the obligation to be truthful and to make only accurate representations to Chase (CLA §10.4 and §10.11).  The CLA expressly stated that any representation set forth in the CLA that was not true was an Event of Default (CLA §12.4 and §12.10) and that the Dunnes' failure to maintain construction permits was an Event of Default (CLA §12.12).  Therefore, the Dunnes' failure to obtain and maintain

the construction permits and their misrepresentation to Chase about the status of the permits were events of Default under Sections 12.4, 12.10 and 12.12 of the CLA.

The effect of the Dunnes' admitted Defaults is that the Dunnes cannot compel Chase to perform under the CLA.  It is elementary that one party to a contract cannot compel another to perform while he himself is in default.  *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (trial court properly sustained demurrer (without leave to amend) where plaintiff's third amended complaint alleged claims for breach of contract and breach of the implied covenant and where plaintiff failed to plead his own performance or an excuse from performance) citing *Lewis Publ'g Co. v. Henderson,* 103 Cal. App. 425, 429 (1930).  Because the TAC pleads facts establishing that the Dunnes failed to substantially perform their obligations under the CLA, the TAC fails to state a claim for breach of the implied covenant of good faith and fair dealing therefore the TAC should be dismissed without leave to amend.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996) (if amendment would be futile, a dismissal may be ordered with prejudice).

> a.   **The Dunnes cannot rely on inadmissible parol evidence to establish that they were excused from performing their obligations under the CLA.**

Recognizing that their failure to obtain the necessary construction permits and their misrepresentation to Chase that they had obtained the permits necessary to construct the Improvements were Events of Default and are fatal to the TAC, the Dunnes attempt to rely on inadmissible parol evidence to establish that they were excused from performing these obligations under the CLA.  Specifically, the TAC alleges that when the Dunnes were applying to Chase for their construction loan, they disclosed to David Jaffe, a Branch Manager for Chase Manhattan Mortgage, that they did not yet have the necessary permits to begin construction on the house and that it would take "several months" to obtain the permits.  (TAC ¶29.)  The Dunnes also

1  allege that they disclosed to Chase that it would take at least 18 months to complete the

2  project.  (TAC ¶29.)  This evidence is barred by the parol evidence rule.

3       The parol evidence rule provides that "[t]erms set forth in a writing intended by

4  the parties as a final expression of their agreement with respect to such terms as are

5  included therein may not be contradicted by evidence of any prior agreement or of a

6  contemporaneous oral agreement."  CAL. CIV. CODE PROC. §1856(a).  And, "[t]he

7  execution of a contract in writing, whether the law requires it to be written or not,

8  supersedes all the negotiations or stipulations concerning its matter which preceded or

9  accompanied the execution of the instrument."  CAL. CIV. CODE §1625.  Extrinsic

10  evidence of the agreement's terms is thus irrelevant, and cannot be relied upon.

11  *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169,

12  1174 (2013) (citing *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343–45 (2004).

13  Although the parol evidence rule results in the exclusion of evidence, it is not a rule of

14  evidence but one of substantive law.  *Id.*  The purpose of the rule is to ensure that the

15  parties' final understanding, deliberately expressed in writing, is not subject to change.

16  *Id.*  The application of the parol evidence rule is a proper question to consider in ruling

17  on a motion under Rule 12(b)(6), and a claim that is dependent on inadmissible parol

18  evidence must be dismissed.  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,

19  2007 U.S. Dist. LEXIS 77132 at *15 (S.D. Cal. 2007) (finding that parol evidence was

20  inadmissible and dismissing first amended complaint under Rule 12(b)(6)).

21       Here, the alleged oral communications between the Dunnes and Jaffe occurred

22  "[w]hen the Dunnes were applying to Chase for the loan," (TAC ¶29) and therefore

23  necessarily occurred before the CLA was executed on March 18, 2009.  The oral

24  communications directly contradict Sections 10.4, 10.5 and 12.12 of the written, fully-

25  integrated CLA requiring the Dunnes to obtain and maintain permits necessary for

26  construction and to make only truthful representations to Chase regarding the permits.

27       Furthermore, the CLA contained an explicit integration clause stating that the

28  CLA and Loan Documents "constitute the entire understanding" between the parties

"and may not be modified, amended, or terminated except by written agreement" signed by both parties.  (CLA §15.5.)  In light of the express integration clause at Section 15.5, it is clear that the parties intended the CLA to be a full and complete expression of their agreement.  *Airs Intern., Inc. v. Perfect Scents Distributions, Ltd.*, 902 F. Supp. 1141, 1146 (N.D. Cal. 1995) (inclusion of express integration clause in contract was conclusive evidence that the parties intended the agreement to be a full and complete expression of their agreement); *Mat-Van, Inc.,* 2007 U.S. Dist. LEXIS 77132 at *17–18 (language of integration clause led to conclusion that agreement was an integrated document that prevented admissibility of parol evidence).

In light of the foregoing, evidence of the alleged oral communications between the Dunnes and Jaffe is barred by the parol evidence rule and the Dunnes cannot rely on it to excuse their failure to perform their obligations under the CLA.  As a result, the Dunnes have failed to state a claim for breach of the implied covenant of good faith and fair dealing and the TAC should be dismissed, just as similar cases have been dismissed in the Central District.  For example, in *Morgan v. Aurora Loan Servs., LLC*, 2014 U.S. Dist. LEXIS 1703, *9 (C.D. Cal. 2014), the district court dismissed with prejudice the borrower's third amended complaint for breach of contract (implied covenant) where the complaint established that the borrower was in default and the parol evidence rule barred evidence of separate oral agreement to permanently modify the borrower's loan. The district court reached a similar result in *Rosenberg v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 40582 (C.D. Cal. 2013) when it dismissed the borrower's complaint for breach of express contract and breach of the implied covenant where the complaint established that parties entered into a final written agreement regarding the amount of borrower's loan and therefore parol evidence rule barred evidence of earlier, separate communications regarding the amount of the loan.  This case is similar to *Morgan* and *Rosenberg* and should similarly be dismissed, with prejudice.

**b.**   **The express terms of the CLA prevent the Dunnes from establishing implied waiver as a matter of law.**

Nor can the Dunnes avoid dismissal of the TAC by arguing that Chase implicitly waived their Defaults under the CLA.  Not only does the TAC fail to allege waiver, any attempt to amend the TAC to establish implied waiver would be futile in light of the express language of the CLA.  Under the CLA, Chase had the express right to make Disbursements after any Event of Default without waiving the right to demand full payment of the Note and the right not to make any future Disbursements.  (CLA §13.3.) Chase also had the specific right to delay exercising a remedy or not to exercise a right or remedy for Default without its delay or omission being construed as a waiver.  (CLA §15.2.)  Finally, the CLA expressly states that it may not be modified or amended except in writing (CLA §15.5) and that no course of dealing between or among any persons having any interest in the CLA would be deemed effective to modify, amend or discharge any part of the CLA.  (CLA §15.17.)  This express contract language prevents the Dunnes from establishing the existence of implied waiver as a matter of law, just as similar language in a promissory note prevented a finding of waiver in *United States v. Grayson*, 879 F.2d 620, 624 (9th Cir. 1989).  In *Grayson*, the Ninth Circuit found that a promissory note which provided that lender's delay or failure to exercise its option to accelerate the note "shall not be construed as a waiver thereof by the Holder, nor shall the Holder be prohibited from exercising its option at any time during which this Note is in default" prevented the plaintiff from establishing any theory of estoppel or waiver.  *Id.*  As a result, the lender was entitled to summary judgment on plaintiff's claim for breach of the implied covenant of good faith and fair dealing based on the lender's alleged "wrongful" acceleration of the note.  *Id.*

As in *Grayson*, the existence of the anti-waiver language at Sections 13.4 and 15.2 of the CLA and the related language at Sections 15.5 and 15.17 conclusively establish that the Dunnes cannot establish waiver by conduct as a matter of law.

///

2. **Paragraph 29 of the TAC establishes that the conditions precedent to Chase's obligation to fund Disbursements were not satisfied.**

The Dunnes also must allege facts establishing that all conditions precedent to Chase's performance occurred. CAL. CIV. CODE §1439; *Rosenfeld* at 968*;* CACI No. 325(3). Failure to do so entitles the defendant to judgment as a matter of law. *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).

Here, Chase's obligation to fund Disbursements of loan funds was specifically conditioned on the Dunnes' satisfaction of all conditions in Section 5 of the CLA (CLA §6). The TAC admits that the Dunnes did not have the necessary permits to begin construction when they obtained the construction loan from Chase. (TAC ¶29.) This admission establishes that the Dunnes failed to comply with Section 10.5 of the CLA in which the Dunnes represented that they "ha[d] obtained all permits, consents, approvals and authorizations … necessary to construct the Improvements"), and Section 10.4 of the CLA in which the Dunnes represented that the CLA contained no untrue statements of material fact. The Dunnes' admitted failure to comply with Sections 10.4 and 10.5 of the CLA establishes the existence of at least three Events of Default as of March 18, 2009: Section 12.4 ("a default under this Loan Agreement shall occur when any representation or warranty set forth herein is not true…"), Section 12.10 (an Event of Default occurs when "[a]ny representation of Borrower of any material fact proves to be false or misleading….") and Section 12.12 (an Event of Default occurs when "Borrower neglects, fails or refuses to keep in full force and effect any permit or approval necessary for the construction and occupancy of the premises").

Chase's obligation to fund Disbursements of loan funds was specifically conditioned on the absence of Events of Default. (CLA §6 and §5.5.) Paragraph 29 of the TAC establishes at least three Events of Default under the CLA. Therefore Paragraph 29 of the TAC establishes that Dunnes have failed to satisfy all conditions precedent to Chase's obligation to fund Disbursements.

3.  **The TAC establishes that Chase did not unfairly interfere with the Dunnes' right to receive the benefits of the CLA.**

The TAC also is deficient because it establishes that Chase did not unfairly interfere with the Dunnes' right to receive the benefits of the CLA. *Rosenfeld* at 968; CACI No. 325(4).

Here, the "benefit" the Dunnes were entitled to receive from the CLA was the use of loan funds on the terms and conditions stated in the CLA and Loan Agreements. *Jenkins v. JPMorgan Chase Bank, N.A.* 216 Cal. App. 497, 529 (2013) (benefit of promissory note and deed of trust was the use of the borrowed funds on the terms and conditions stated in the note and deed of trust). Under the express terms of the CLA, the Dunnes had no right to receive any benefits under the CLA because they were in Default under Sections 12.4, 12.10 and 12.12 of the CLA and, as a result, the express conditions precedent to Chase's obligation to fund Disbursements under Sections 5.5 and 6 of the CLA had not been satisfied.

In addition, the TAC establishes that Chase did not unfairly interfere with the Dunnes' right to receive the benefits of the CLA because the implied covenant exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement *actually made*. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–350 (2000) (original italics). Absent a contractual right, the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). For that reason, the implied covenant cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement (*Guz*, 24 Cal. 4th at 349–350) and can never be read to vary the parties' express contractual rights. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373–376 (1992) (where one party engages in conduct that is expressly authorized by the contract, that conduct could never violate an implied covenant of good faith and fair dealing as a matter of law).

1    The TAC does not and cannot establish that Chase unfairly interfered with the

2    Dunnes' right to receive the benefits of the CLA because, as discussed below,

3    (1) Chase's actions were expressly permitted by the CLA and therefore cannot be a

4    breach of the implied covenant under *Carma Developers*, (2) as a result of the Dunnes'

5    Defaults, the Dunnes had no right to Disbursements in any amount, and (3) Chase's

6    reporting of the Dunnes' loan payment history to credit-rating agencies is not hinged to

7    any express contractual term and also is a privileged communication under Civil Code

8    section 47(c)(1).  Each of these is discussed below.

9

10        a.    **Chase's actions were expressly permitted by the CLA and**

11              **therefore cannot be a breach of the implied covenant**

12              **under *Carma Developers*.**

13    The TAC alleges that Chase unfairly deprived the Dunnes of the benefits of the

14    CLA when it (1) stopped advancing loan funds (TAC ¶32), (2) accelerated the loan,

15    (TAC ¶34), (3) issued a Notice of Default dated November 5, 2009 stating that the

16    Dunnes had failed to diligently pursue completion of the Encina Road project  (TAC

17    ¶32) and (4) "forced" the Dunnes to accept a new Completion Date of July 1, 2010

18    (TAC ¶33).

19        Chase's actions were expressly permitted by the CLA due to the Dunnes'

20    multiple Defaults.  Paragraph 29 of the TAC establishes that the Dunnes did not have

21    the necessary permits to begin construction before they obtained the construction loan.

22    Despite this, the Dunnes falsely represented to Chase that they had obtained the

23    necessary permits.  (CLA §10.5.)  The Dunne's failure to obtain and maintain the

24    permits and their misrepresentation to Chase about the permits were Events of Default

25    under Sections 12.4, 12.10 and 12.12 of the CLA.  As a result of these Defaults, Chase

26    was expressly authorized to terminate future Disbursements (CLA §13.1), accelerate

27    the Note (CLA §13.2) and pursue its remedies under the Deed of Trust, including

28    foreclosure (CLA §13.4.)

1    The Dunnes' Defaults under the CLA likewise terminated their right to enforce

2    the related and dependent Addendum and Modification Agreement.  An addendum or

3    modification is not a separate contract and has no significance apart from the contract

4    that it adds to or modifies.  *Adams v. Explorer Ins. Co.*, 107 Cal. App. 4th 438, 450–451

5    (2003) (stating that an insurance endorsement is an amendment to or modification of an

6    existing policy of insurance and means nothing standing alone).  For that reason, the

7    contract and the addendum and modification must be construed as a whole (*id.*), and

8    conditions stated in the contract also apply to the addendum.  2 WITKIN, SUM. CAL.

9    LAW INSURANCE §29 (relating to amendments to and modifications of insurance

10   contracts).  In the Addendum and Modification Agreement, the Dunnes expressly

11   reaffirmed all of their obligations under the CLA.  (Addendum and Modification, §8.)

12   Chase's express right to terminate Disbursements, accelerate the Note and pursue

13   foreclosure as a result of Events of Default therefore applied equally to the related and

14   dependent Addendum and Modification Agreement.  Because the Dunnes had no right

15   to receive Disbursements under the CLA as a result of their Defaults, they likewise had

16   no right to receive Disbursements for an extended period under the Addendum and

17   Modification Agreement.

18   The TAC further alleges that after Chase exercised its right to accelerate the Note

19   and pursue foreclosure, Chase allegedly "forced" the Dunnes to accept an "earlier"

20   completion deadline of July 2, 2010 (TAC ¶33).  The CLA provided for an original

21   construction Completion Date of March 17, 2010.  (CLA §1.2.)  The TAC establishes

22   that the Dunnes were in Default under the CLA and therefore were not contractually

23   entitled to Disbursements during the original construction term or during the six-month

24   extension of that term under the Addendum and Modification Agreement.  Therefore,

25   an alleged modified Completion Date of July 2, 2010 was in fact a *lengthening* of the

26   construction period (without imposition of a fee (TAC ¶33)), not a shortening of it, and

27   therefore this conduct did not unfairly interfere with the Dunnes' contractual rights.

28   ///

1    Finally, the TAC alleges that Chase "tried to charge" the Dunnes a $6,000 fee for

2    the extension to July 1, 2010 but concedes that Chase did not charge the fee.  (TAC

3    ¶33.)  This allegation likewise cannot establish that Chase deprived the Dunnes of the

4    benefit of the CLA because the Paragraph 29 of the TAC establishes that the Dunnes

5    were in Default under the CLA and therefore were not contractually entitled to an

6    extension of the Completion Date at no cost under the Addendum and Modification

7    Agreement.  Second, the TAC admits that Chase did not charge the fee and therefore

8    the TAC concedes that this alleged "breach" did not ultimately occur.  (TAC ¶33.)

9

10              **b.**      **As a result of the Dunnes' Defaults, the Dunnes had no**

11                     **right to Disbursements in any amount.**

12    The TAC further alleges that Chase unfairly interfered with the Dunnes' right to

13    receive Disbursements when Chase "delayed unreasonably" in paying "certain of" the

14    Dunnes' Draw Requests (TAC ¶36) and paid 14 Draw Requests in the amounts less

15    than the Dunnes requested (TAC ¶35).  Neither of these allegations establishes that

16    Chase unfairly interfered with the Dunnes' right to receive Disbursements under the

17    CLA because the Dunnes had no right to receive Disbursements in any amount or

18    within any period of time because the Dunnes were in Default under Sections 12.4,

19    12.10 and 12.12 of the CLA from the moment they signed the CLA.  As a result, the

20    express conditions precedent to Chase's obligation to fund Disbursements under

21    Sections 5.5 and 6 of the CLA had not been satisfied and Chase was expressly entitled

22    to stop funding Disbursements entirely.  (CLA §13.1.)  Chase's exercise of this express

23    contractual right cannot be a violation of the implied covenant as a matter of law, and

24    the implied covenant cannot be read to impose an implied term that is at odds with its

25    express rights under the contract.  *Carma Developers*, 2 Cal. 4th 342 at 375–376.

26    ///

27

28    ///

KYL_LB1706959.v4

c.   **Chase's reporting of the Dunnes' payment history to**
**credit-rating agencies is not hinged to any express**
**contractual term and is a privileged communication.**

The TAC also cannot establish that Chase unfairly deprived the Dunnes of the benefits of the CLA when it allegedly "defamed" the Dunnes by reporting to credit-rating agencies that the Dunnes had failed to make timely payments on their loan (TAC ¶37) because the Loan Documents do not create any contractual rights on this point.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated. *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013); *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1102 (E.D. Cal. 2010) (motion to dismiss granted where plaintiff failed to allege how defendant frustrated his rights under the contract). A claim for breach of the implied covenant fails to state a cause of action where it is not hinged to any express contractual term. *Grant v. Aurora Loan Servs.*, 736 F. Supp. 2d 1257, 1268 (C.D. Cal. 2010) (court dismissed plaintiff's claim for breach of the implied covenant where plaintiff failed to specify the contractual provision from which the implied covenant allegedly arose); *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C. D. Cal. 2007). The implied covenant does not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms. *Id.* (citations omitted).

The TAC fails to hinge Chase's reporting of the Dunnes' loan payment history to credit-ratings agencies to any express contractual term. Because none of the Loan Documents creates any contractual rights or obligations with respect to Chase's reporting of information to credit-rating agencies, an implied covenant of good faith and fair dealing does not exist on that point. Since a covenant that does not exist cannot be breached, this allegation fails to state a claim for breach of the implied covenant of good faith and fair dealing. *Barajas v. Countrywide Home Loans, Inc.*, 2012 U.S. Dist. LEXIS 24237, 11–12 (C.D. Cal. 2012) (claim for breach of the implied covenant of

1    good faith and fair dealing dismissed because contract did not create an obligation to

2    negotiate a loan modification and therefore covenant of good faith and fair dealing did

3    not exist on that point).

4           Chase's reporting of information to the credit-rating agencies fails to establish a

5    cause of action for breach of the implied covenant for another independent reason:

6    Chase's reports to the credit-rating agencies are protected by the common interest

7    privilege codified at California Civil Code section 47(c) and the TAC fails to allege

8    facts establishing that the privilege has been lost.  The common interest privilege

9    applies to "a communication, without malice, to a person interested therein… by one

10   who is also interested in the information.  CAL. CIV. CODE §47(c)(1).  A lender's

11   communication to a credit-reporting agency regarding a borrower's payment history

12   falls with the common interest privilege.  *Janossy v. Wash. Mut. Bank*, 2002 Cal. App.

13   Unpub. LEXIS 8524, *17–20 (2002),[6] citing *Roemer v. Retail Credit Co.*, 3 Cal. App.

14   3d 368, 370-371 (1970).  Where a pleading establishes the existence of a qualified

15   privilege on its face, the pleading must contain affirmative allegations of malice in fact

16   in order to state a cause of action.  *Locke v. Mitchell*, 7 Cal. 2d 599, 602 (1936)

17   (affirming order sustaining demur where complaint disclosed a case of qualified

18   privilege and failed to contain affirmative allegations of malice in fact).  The "actual

19   malice" required to overcome the common interest privilege is a state of mind arising

20   from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.

21   *Lundquist v. Ruesser*, 7 Cal. 4th 1193, 1204 (1994).  Actual malice cannot be inferred

22   from the communication itself.  CAL. CIV. CODE §48.  The TAC establishes the

23   existence of the qualified privilege under Civil Code section 47(c)(1) but fails to allege

24   any facts establishing that Chase acted with actual malice when it communicated

25   information about the Dunnes' payment history to the credit-rating agencies.

26   _____

27   [6]  The District Court is not precluded from considering unpublished state court
     decisions but is not bound by them either.  *Nunez by Nunez v. City of San Diego*, 114
28   F.3d 935, 942 n.4 (9th Cir. 1997).

1    Therefore, this alleged conduct cannot constitute a breach of the implied covenant of

2    good faith and fair dealing as a matter of law.

3

4          **4.    The TAC establishes that the Dunnes' alleged "harm" was**

5                 **caused by their own failure to perform under the CLA, not by**

6                 **Chase's conduct.**

7          Finally, the TAC establishes that the Dunnes were not harmed by Chase's

8    conduct.  *Rosenfeld,* 732 F. Supp. 2d at 968; CACI No. 325(5).

9          A breach of contract must cause damage for a claim to survive.  Absent proof of

10   causation, the defendant is entitled to judgment as a matter of law.  *Rufo v. N.B. C.*

11   *Nat'l Broad. Co.*, 166 Cal. App. 2d 714, 719 (1959).  Where the plaintiff's damages are

12   caused by the plaintiff's own failure to perform his obligations under the agreement, the

13   complaint fails to state a cause of action for breach of contract and should be dismissed.

14   *Southall v. Sec. Title Ins. & Guarantee Co.*, 112 Cal. App. 2d 321, 323 (1952) (order

15   sustaining demurrer to breach of contract claim sustained where plaintiff's losses were

16   caused by plaintiff's own failure to perform).

17         Here, the TAC alleges that the Dunnes sold another property they owned in

18   Topanga Canyon (the "Skyline Trail" property) to fund construction of the Encina Road

19   project.  (TAC ¶ 40.)  The Dunnes' need to raise funds from a source other than the

20   construction loan was caused by their own failure to perform their obligations under the

21   CLA, not by Chase's conduct.  Therefore, the TAC fails to establish the "harm"

22   element of the Dunnes' claim for breach of the implied covenant of good faith and fair

23   dealing.

24   ///

25

26

27

28   ///

1

## IV. <u>CONCLUSION</u>

2      The Dunnes have had four opportunities to plead a viable cause of action against

3 Chase.  The allegations at Paragraph 29 of the TAC conclusively establish that they

4 have failed to do so.  As a result of the Dunnes' multiple Defaults, Chase was expressly

5 entitled to stop funding the Dunnes' loan, accelerate their Note and foreclose on the

6 property.  The TAC therefore fails to state a claim for breach of the implied covenant of

7 good faith and fair dealing, and its deficiencies cannot be cured.

8      The TAC should be dismissed, with prejudice.

9

10

11 DATED:  February 27, 2014          /s/ Stacey M. Garrett _____

12                                    TERRY ROSS
                                      STACEY M. GARRETT
13                                    CHRISTOPHER R. FARNSWORTH
                                      KEESAL, YOUNG & LOGAN
14                                    Attorneys for Defendant
                                      JPMORGAN CHASE BANK, N.A.
15

16

17

18

19

20

21

22

23

24

25

26

27

28