**COHEN McKEON LLP**
MICHAEL L. COHEN (SBN: 206253)
HEATHER M. McKEON (SBN: 186414)
BRIAN L. POULTER (SBN: 285108)
1910 West Sunset Blvd., Suite 440
Los Angeles, California 90026
Telephone:   (213) 413-6400
Facsimile:    (213) 403-6405
cohen@cohenmckeon.com
mckeon@cohenmckeon.com
poulter@cohenmckeon.com

**LAW OFFICE OF STEVEN M. KLUGMAN**
STEVEN M. KLUGMAN (SBN: 53902)
1334 Park View Ave., Suite 100
Manhattan Beach, California 90266
Telephone:   (310) 318-6849
Facsimile:    (310) 277-8218
steven.smklaw@gmail.com

Attorneys for Plaintiffs,
KEVIN J. DUNNE & CATHERINE M. DUNNE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| KEVIN J. DUNNE, an individual, and CATHERINE M. DUNNE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> JP MORGAN CHASE BANK, N.A., a National Banking Association, and DOES 1-10, inclusive, <br> Defendant. | CASE NO.: 2:13-CV-000919-DDP-OP <br><br> *[Assigned to Hon. Dean D. Pregerson]* <br><br> **THE DUNNES' OPPOSITION TO CHASE BANK'S MOTION TO DISMISS THE DUNNES' THIRD AMENDED COMPLAINT** |

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………...2

RELEVANT FACTUAL ALLEGATIONS…………………………………….2

The Dunnes………………………………………………………………..2

The Dunnes Relationship With Chase………………………………………..3

The Construction Loan Agreement…………………………………………..3

How Chase Breached the Construction

Loan Agreement……………………………………………………………..4

ARGUMENT………………………………………………………………….7

I.       STANDARD FOR A MOTION TO DISMISS…………………………7

II.      THE ALLEGATIONS IN THE DUNNES'

         3AC DO NOT ESTABLISH THE REQUISITE

         "ABSOLUTE" AFFIRMATIVE DEFENSE

         TO THE DUNNES' CLAIM………………………………………….7

              A. Chase Has Not and Cannot Show by

                 Way of 12(b)(6) Motion that it Relied

                 Upon the Dunnes' Alleged "Material

                 Misrepresentations" in Making the

                 Loan and/or Disbursing the Loan Proceeds………………….9

B. Chase Did Not Have the Right to

Partially Fund the Dunnes' Draw

Requests Under the CLA. Chases' Remedies

Were Limited to Complete Termination,

Acceleration, or Possession…………………………………………..10

III.   THE DUNNES ARE NOT RELYING

ON INADMISSIBLE PAROL EVIDENCE

TO ESTABLISH THAT THEY WERE

EXCUSED FROM PERFORMING

THEIR OBLIGATIONS UNDER THE CLA…………………………….11

IV.   CHASE UNFAIRLY INTERFERED

WITH THE DUNNES' RIGHT TO

RECEIVE THE BENEFITS OF

THE CONTRACT……………………………………………………....13

A. Chase Assumes Incorrectly that Its

False Reporting to Credit Agencies

Cannot Establish Liability for Breach

of Contract…………………………………………………………..14

V.   CHASE ASSUMES INCORRECTLY THAT

THE DUNNES CANNOT ESTABLISH

IMPLIED WAIVER…………………………………………………….15

TABLE OF CONTENTS

1

CONCLUSION…………………………………………………………………...18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>FEDERAL CASES</u>

3

4

*Ashcroft v. Iqbal,* (2009)

     556 U.S .662, 129 S.Ct. 1937, 173 L.Ed.2d 868…………………………...…….....7

*Bell Atlantic Corp. v. Twombly,* (2007)

     550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929……………………………...……7

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc,.* (9th Cir. 1992)

     971 F.2d 272……………………………………………………………………12

*Doe v. United States,* (9th Cir. 2005)

     419 F.3d 1058…………………………………………………………………….7

*Erie R.R. v. Tompkins,* (1938)

     304 U.S. 64, 58 S.Ct. 817, 82 L. Ed 1188……………………...…………..11

*Harmston v. City & Cnty. Of San Francisco,* (9th Cir. 2010)

     627 F.3d 127………………………………………………………………...8

*Marsu, B.V. v. Walt Disney Co.,* (9th Cir. 1999)

     185 F.3d 932………………………………………………………………...13

*McCalden v. California Library Ass'n,* (9th Cir. 1990)

     955 F.2d 1214………………………………………………………………...8

*Reinhardt v. Gemini Motor Transport* ,(E.D. Cal. 2012)

     879 F. Supp. 2d 1138………………………………………………………13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STATE CASES

2

3
*Black v. Arnold Best Co.,* (1954)
4
    124 Cal. App. 3d 378…………………………………..……………………………..15
5
*Carma Developers, Inc. v. Marathon Development, Inc.,* (1992)
6
    2 Cal. 4th 342………………………………………...……………………………..…13
7
8
*Casa Herrera, Inc. v. Beydoun,* (2004)
9
    32 Cal. 4th 336…………………………………………………………………....12
10
*Grady v. Luy,* (1931)
11
12
    117 Cal. App. 292……………………………………………………………………10
13
*Gould v. Corinthian Colleges, Inc.,* (2011)
14
    192 Cal. App. 4th 1176……………………………………………..………15,16
15
16
*Guz v. Bechtel Nat'l, Inc.,* (2000)
17
    24 Cal. 4th 317……………………………………………………...………14
18
*Hamilton v. Greenwich Investors XXVI, LLC,* (2011)
19
    195 Cal. App. 4th 1602………………………………………….……………...8
20
21
*Henderson v. Drake,* (1953)
22
    42 Cal. 2d 1…………………………………………………...…………15
23
*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Ass'n ,* (2013)
24
25
    55 Cal. 4th 1169……………………………...…………………………..12,13
26
*Salton community Services Dist. V. Southard,* (1967)
27
    256 Cal. App. 2d 526………………………………………………………...…15
28

## RULES AND STATUTES

California Code of Civil Procedure section 1856(e)……………………………...……12

California Code of Civil Procedure section 1856(g)…………………………………...…12

California Code of Civil Procedure section 1860…………………………………...…………12

FRCP Rule 12(b)(6)…………………………………………………….……..2,7,8,9,10,18

### INTRODUCTION

JP Morgan Chase Bank's ("Chase")  Rule 12(b)(6) Motion to Dismiss ("Motion") ignores the limited role of a Rule 12(b)(6) motion: to test the legal sufficiency of the claims asserted in Kevin and Catherine Dunnes' (the "Dunnes") Third Amended Complaint ("3AC").  Instead of providing argument for why the Dunnes' 3AC is deficient as a matter of law, Chase provides arguments based on assumed facts that lack proper evidentiary support.  In essence, Chase asks this Court to summarily adjudicate the issues presented by the Dunnes' 3AC without allowing the Dunnes the opportunity to litigate their claim for breach of contract on the merits.  This is improper, and as such, Chase's Motion should be denied in its entirety.

### RELEVANT FACTUAL ALLEGATIONS

#### The Dunnes

Kevin Dunne is a professional real estate appraiser.  (3AC, ¶ 15)  He has been a professional real estate appraiser for 35 years.  (3AC, ¶ 15)  Catherine Dunne is a part-time real estate appraiser.  (3AC, ¶ 19)  The Dunnes together began buying properties and building homes on them for profit in or about 1980.  (3AC, ¶ 20)  Since then, the Dunnes have bought properties, built homes on them, and sold them profitably nine times.  (3AC, ¶ 22)  There are reasons why the Dunnes have consistently earned profits on each of their building projects.  (3AC, ¶ 23)  They are selective about the properties they buy.  (3AC, ¶ 23)  They buy properties only in markets with which they are familiar.  (3AC, ¶ 15)  They build only one home at a time.  (3AC, ¶ 23)  They are conscientious regarding the

servicing of loans to which they have committed, and they are able and willing to invest the time and money necessary to develop the properties they buy. (3AC, ¶ 23) They disclosed all of this to Chase when they first met David Jaffe, a Chase employee. (3AC, ¶ 24)

### The Dunnes Relationship With Chase

The Dunnes first met Chase in 2005 through David Jaffe, who was then a Branch Manager for Chase Manhattan Mortgage. (3AC, ¶ 25) The Dunnes had purchased the subject Encina Road property and had just begun the process of preparing the land for construction. (3AC, ¶ 26) At Jaffe's request, the Dunnes sent Jaffe a letter summarizing the history of their construction projects over the preceding 15 years. (3AC, ¶ 26) The Dunnes spent the next three years preparing the Encina Road property for construction. (3AC, ¶ 27) When the time came to obtain a construction loan, the Dunnes followed up with Jaffe, who had repeatedly told the Dunnes about the favorable loan terms that Chase would offer them for a construction loan. (3AC, ¶ 27) Jaffe also emphasized Chase's reputation for customer service on construction loans. (3AC, ¶ 27)

### The Construction Loan Agreement

Chase and the Dunnes entered into a Construction Loan Agreement that was dated March 18, 2009. (3AC, ¶ 28) The loan closed on March 19, 2009. (3AC, ¶ 28) The purpose of the loan was "for the funding of disbursements for construction of a single-family residence" on the real property located at 21717 Encina Road, Topanga, CA 90290. (3AC, ¶ 28) When the Dunnes were applying to Chase for the loan, they

disclosed to Jaffe that they did not yet have the necessary permits to begin construction on the house and that it would take as many as several months to obtain these permits.  (3AC, ¶ 29)  The Dunnes also disclosed to Chase that it would take at least 18 months to complete the project.  (3AC, ¶ 29)  To allow the Dunnes additional time, Chase agreed to modify the one-year term of the loan with a "Construction Loan Agreement Addendum and Modification."  (3AC, ¶ 30)  The loan became in effect an 18-month loan.  (3AC, ¶ 30)  Jaffe also led the Dunnes to believe that Chase would be flexible in dealing with deadlines and that Chase would continue servicing their construction loans as the bank had in the past.  (3AC, ¶ 31)

### How Chase Breached the Construction Loan Agreement

Chase first breached the contract when it issued a Notice of Default dated November 5, 2009.  (3AC, ¶ 32)  Chase alleged in that Notice that the Dunnes had failed to "diligently pursue completion" of the Encina Road project.  (3AC, ¶ 32)  Chase then stopped advancing funds.  (3AC, ¶ 32)  In fact, the Dunnes had been diligently pursuing completion of the project, until November 2009, when the Dunnes had to direct their efforts toward persuading Chase that it was mistaken.  (3AC, ¶ 32)  Chase eventually realized that the Dunnes were right and resumed funding, though nearly a month had passed.  (3AC, ¶ 32)

As part of the November 2009 negotiations to resume funding, Chase forced the Dunnes to accept an earlier completion date—July 1, 2010—even though the completion date under the original Construction Loan Agreement, as modified, was September 18,

2010. (3AC, ¶ 33)  Chase tried to charge the Dunnes $6,000 for the "extension" to July 1, 2010—in reality, a shortening of the term—but eventually backed down when the Dunnes reminded the bank that the extension in the original agreement, as modified, was automatic "without the payment of an extension fee." (3AC, ¶ 33)

On or about January 15, 2010—less than two months after agreeing to resume funding and forcing the Dunnes to accept a shortened time to complete the project—Natalia Carabajal, a "Client Relationship Manager" for Chase called to say that the bank was "collapsing" the Dunnes' loan, insisting that the Dunnes repay the entire amount they had borrowed to date within 30 days or face immediate foreclosure. (3AC, ¶ 34)

In response, the Dunnes sought help from Cathay Bank. (3AC, ¶ 37)  Cathay Bank stepped in to provide permanent funding for the Dunnes' project and paid in full all sums the Dunnes owed to Chase. (3AC, ¶ 37)  Despite this, Chase falsely and repeatedly reported to the credit-rating agencies—Equifax, TransUnion, and Experian—that the Dunnes had failed to make timely payments on the fully repaid loan. (3AC, ¶ 37)  Thus, even though Chase had been paid in full, Chase insisted on reporting, falsely, that the Dunnes were not making their loan payments timely. (3AC, ¶ 37)  This cause the Dunnes credit score to drop substantially. (3AC, ¶ 37)

Over the course of the loan, Chase fully funded a draw request from the Dunnes only once—their first request, for $34,728. (3AC, ¶ 35)  The Dunnes subsequently submitted another 14 draw requests to Chase, and the bank never fully funded any of them. (3AC, ¶ 35)

Chase's withholding of funds and delays in funding damaged the Dunnes. (3AC, ¶ 39) For example, as a result of Chase's delay, the Dunnes were forced to complete the foundation in December—the rainy season. (3AC, ¶ 39) This forced the Dunnes to spend substantially more to complete the foundation than they would have had Chase funded timely and in full, which would have enabled the Dunnes to have the foundation laid before the rains came. (3AC, ¶ 39) In addition, there were several times during construction when the Dunnes had to tell their contractors to stop working because Chase had failed to fund timely and in full. (3AC, ¶ 39)

The Dunnes acted diligently to mitigate the damage caused by Chase's repeated failure to fund their draw requests timely and in full. (3AC, ¶ 40) For example, to make up for the shortfalls in funding by Chase, the Dunnes sold another Topanga property that they owned, this one on Skyline Trail. (3AC, ¶ 40) This forced sale caused the Dunnes to lose hundreds of thousands of dollars that they would have made on Skyline Trail but for the forced sale. (3AC, ¶ 40) Chase knew of this possibility, or reasonably should have known of this possibility, because the Dunnes had disclosed to Chase their ownership of the Skyline Trail property and their plans for it. (3AC, ¶ 40)

The Dunnes' 3AC alleges a single cause of action—breach of contract. (3AC, ¶¶ 1-46) The Dunnes did all or substantially all of the significant things that the contract required them to do or, in the alternative, the Dunnes were excused from having to do those things. (3AC, ¶ 43) Similarly, all conditions required for Chase's performance had occurred or were excused. (3AC, ¶ 44) Chase unfairly interfered with the Dunnes' right

to receive the benefits of the contract.  (3AC, ¶ 45)  The Dunnes' 3AC is based on

Chase's repeated breaches of the implied covenant of good faith and fair dealing that as a

matter of California law is read into the agreement between Chase and the Dunnes.

<u>ARGUMENT</u>

## I.   <u>STANDARD FOR A MOTION TO DISMISS</u>

When evaluating a Rule 12(b)(6) motion, the court must accept as true all non-

conclusory, factual allegations made in the complaint. *Ashcroft v. Iqbal*, (2009) 556 U.S.

662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("*Iqbal*").  The court must also

draw all reasonable inferences in favor of the plaintiff.  *Doe v. United States,* 419 F.3d

1058, 1062 (9th Cir. 2005).  After accepting as true all factual allegations and drawing all

reasonable inferences in favor of the plaintiff, the court must determine whether the

complaint alleges a plausible claim for relief.  *Iqbal,* 556 U.S. at 678.  A claim has facial

plausibility when the plaintiff pleads facts that allow the court to draw the reasonable

inference that the defendant is liable for the alleged misconduct.  *Iqbal,* 556 U.S. at 678

(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167

L.Ed.2d 929 (2007)).

## II.   <u>THE ALLEGATIONS IN THE DUNNES' 3AC DO NOT ESTABLISH THE REQUISITE "ABSOLUTE" AFFIRMATIVE DEFENSE TO THE DUNNES' CLAIM.</u>

For a complaint to be dismissed because allegations within the complaint give rise

to an affirmative defense, the defense must appear clearly on the face of the complaint.

7

*McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) ("*McCalden*")

(superseded by rule on other grounds as stated in *Harmston v. City & Cnty. Of San*

*Francisco*, 627 F.3d 127 (9th Cir. 2010)).  Where the alleged affirmative defense

disclosed in the complaint is conditional rather than absolute, a 12(b)(6) motion should be

denied.  *McCalden,* 955 F2d at 1219.

      Chase argues at length that "[t]he Dunnes' failure to obtain the construction permits

and their misrepresentation to Chase about the permits were events of default under the

[CLA]" and that "[t]he absence of any default was an express condition precedent to

Chase's obligation to fund the Dunnes' loan disbursements."  Chase argues that this

"conclusively establishes that [the] Dunnes failed to perform" under the contract,

preventing the Dunnes from stating a plausible claim for relief as a matter of law.  What

Chase ignores—and what Chase fails to address in its motion—is the fact that so long as

the Dunnes plead that their nonperformance, if any, was excused, then the allegations in

the Dunnes' 3AC do not establish the requisite "absolute" defense required for dismissal.

      Chase relies on *Hamilton v. Greenwich Investors XXVI, LLC,* 195 Cal. App. 4th

1602, 1614 (2011) ("*Hamilton*") to support its erroneous position.  In *Hamilton*, the

plaintiffs alleged a cause of action for breach of contract among others.  *Id.*  The

defendant demurred to the breach of contract cause of action claiming that the plaintiff

failed to allege performance, or that they were excused from performing.  *Id.*  The trial

court sustained the defendant's demurrer.  *Id.*  In upholding the trial court's ruling, the

Court of Appeal noted: "More importantly, conspicuously absent from the complaint is

*any* allegation that plaintiffs performed under the forbearance agreement *or* that they were excused from performing.  Nor do plaintiffs suggest on appeal that they could amend the complaint to so state.  Consequently, defendants' demurrer to this cause of action was properly sustained without leave to amend." *Id.* (emphasis added).

Had the Dunnes failed to allege performance under the CLA, or that their nonperformance, if any, was excused, then Chase would be correct that the Dunnes' 3AC fails as a matter of law.  However, the Dunnes' 3AC alleges both performance and, alternatively, excuse of performance.  (3AC ¶ 43)  These allegations, when read in context with the extensive factual allegations contained in the Dunnes' 3AC, is sufficient pleading for purposes of surviving Chase's 12(b)(6) motion to dismiss.

A. **Chase Has Not and Cannot Show by Way of 12(b)(6) Motion that it Relied Upon the Dunnes' Alleged "Material Misrepresentations" in Making the Loan and/or Disbursing the Loan Proceeds.**

Chase's entire motion is anchored to alleged "misrepresentations" made by the Dunnes.  According to Chase, because the Dunnes misrepresented that they had the necessary permits to commence construction, Chase could not have acted in bad faith because the CLA permitted Chase to delay and partially fund payment, or not fund payment at all.  These arguments ignore the fact that, to defeat the Dunnes' 3AC on this basis, Chase would have to prove: (i) that there was a misrepresentation, (ii) that it was material, and (iii) that Chase relied upon the misrepresentation in executing the CLA and disbursing funds.

For example, Section 12.10 states: "<u>Misrepresentations:</u>  Any representation of Borrower or omission by Borrower of any *material* fact which proves to be false or misleading *and which is or shall be relied upon by Lender* in making the Loan and/or disbursing the Loan proceeds under this Loan Agreement."  (emphasis added)  Based on section 12.10, for a misrepresentation to qualify as an Event of Default under the CLA, the representation must be proven to be false or misleading, the misrepresentation must be material to the agreement, and Chase must have relied upon the material misrepresentation in making the Loan and/or disbursing Loan proceeds.

Chase has not and cannot show by way of a 12(b)(6) that the Dunnes made a false or misleading representation.  Nor can Chase show that the alleged misrepresentation was material.  Whether a misrepresentation is material depends largely upon the attendant facts and circumstances of each particular case.  *Grady v. Luy*, 117 Cal. App. 292, 294 (1931).  This cannot be shown by mere assertions and conclusions devoid of merit or evidentiary support.  Similarly, Chase has not and cannot show that it relied upon the material misrepresentation in making the Loan and/or disbursing Loan proceeds, which is an express term and prerequisite to determining what qualifies as an Event of Default pursuant to section 12.10.  These are issues of fact that must be addressed by way of summary adjudication, not a 12(b)(6) motion.

## B. **Chase Did Not Have the Right to Partially Fund the Dunnes' Draw Requests Under the CLA.  Chases' Remedies Were Limited to Complete Termination, Acceleration, or Possession.**

Chase argues that because the Dunnes defaulted on the Loan, it had the "sole, absolute and arbitrary discretion" to either continue to fund draw requests, not fund draw requests at all, partially fund draw requests, or accelerate the Loan and foreclose on the property all together. Assuming, *arguendo*, that the Dunnes had defaulted on the Loan, the CLA does not afford Chase the remedy of partially funding all but one draw request to the detriment of the Dunnes. (CLA § 13) (upon occurrence of any Event of Default, Lender may at its option terminate obligation to make further Disbursements, declare the Note immediately due and payable, or take possession).

Moreover, Chase included a "Time is of the Essence" clause, which states: "Time is of the essence in the performance of each and every part of this Loan Agreement." Chase knew, or reasonably should have known, that the Dunnes would be relying on Chase to disburse Loan funds timely and fully so that construction could be completed on time. Chase failed in its obligations in this respect, and as such, breached the CLA. However, these are not issues to be decided at the pleadings stage. It would be premature to strike the Dunnes' 3AC without allowing the Dunnes the opportunity to conduct discovery on these issues and present them based on evidence at the appropriate time.

## III. THE DUNNES ARE NOT RELYING ON INADMISSIBLE PAROL EVIDENCE TO ESTABLISH THAT THEY WERE EXCUSED FROM PERFORMING THEIR OBLIGATIONS UNDER THE CLA.

In a diversity case, district courts apply federal procedural law and state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

11

Although the parol evidence rule results in the exclusion of evidence, it is not a rule of evidence but one of substantive law. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004); *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.,* 971 F.2d 272 (9th Cir. 1992) (applying California law).

Where a mistake or imperfection of a contract is put in issue by the pleadings, the parol evidence rule does not exclude evidence relevant to that issue. CCP § 1856(e). Similarly, the parol evidence rule does not exclude evidence of "the circumstances under which the agreement was made or to which it relates," as defined in CCP § 1860. CCP § 1856(e). Extrinsic evidence may also be considered to explain ambiguities, interpret the terms of a contract, or to establish illegality or fraud. CCP § 1856(g). And most recently, the California Supreme Court held that the parol evidence rule does not bar evidence of fraudulent promises at variance with terms of the writing. *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Ass'n,* 55 Cal. 4th 1169 (2013) ("*Riverisland*").

Contrary to Chase's assertions, the Dunnes are not "relying" on parol evidence to "excuse their failure to perform their obligations under the CLA." In fact, the 3AC alleges just the opposite. The Dunnes' 3AC alleges that when the Dunnes were applying to Chase for their construction loan, they disclosed to Jaffe that it would take "several months" to obtain the permits. The Dunnes also allege that they disclosed to Chase that it would take at least 18 months to complete the project, thus the reason for the addendum extending the term an additional 6 months. The Dunnes' 3AC puts at issue the circumstances under which the CLA was made, the correct interpretation of the CLA,

whether a potential mistake or imperfection of the CLA exists, and whether fraudulent promises at variance with the terms of the CLA were made regarding the CLA. Evidence relevant to these issues is not barred by the parol evidence rule regardless of whether the CLA contained an explicit integration clause. *Riverisland,* 55 Cal. 4th at 1174-1184 (holding that fraudulent promises at variance with the express terms of the writing are admissible, even when dealing with integrated writings).

## IV.   CHASE UNFAIRLY INTERFERED WITH THE DUNNES' RIGHT TO RECEIVE THE BENEFITS OF THE CONTRACT.

"In California, there is 'an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Reinhardt v. Gemini Motor Transport*, 879 F. Supp. 2d 1138, 1144 (E.D. Cal. 2012) ("*Reinhardt*") (quoting *Kransco v. American Empire Surplus Lines Ins. Co.,* 23 Cal. 4th 390, 400 (2000)). Its purpose is "'to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's right to the benefits of the contract.'" *Reinhardt,* 879 F. Supp. 2d at 1144 (quoting *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 937 (9th Cir. 1999) ("*Marsu*")). In other words, a "'breach of a specific provision of the contract is not a necessary prerequisite'" to a claim for breach of the implied covenant. *Reinhardt,* 879 F. Supp. 2d at 1144 (quoting *Marsu*, 185 F.3d at 937); *Carma Developers, Inc. v. Marathon Development, Inc.,* 2 Cal. 4th 342, 373 (1992). The implied covenant does not, however, impose substantive duties or limits on the contracting parties beyond

13

those incorporated in the terms of the agreement.  *Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 350 (2000).

As alleged in the Dunnes' 3AC, the purpose of the CLA was to provide funds to the Dunnes over a period of 18 months to construct a single-family residence.  Shortly after Chase agreed to provide the loan to the Dunnes, the bank decided that it no longer wanted to make these kinds of construction loans and to rid itself of such loans it already had made, regardless of the borrower's credit-worthiness or the project's merit.  Specifically with the Dunnes, Chase unreasonably delayed approval and funding of reasonable draw requests with no explanation as to why.  Chase withheld funds that Chase had promised to provide with no explanation, which the Dunnes needed to complete the project.  Chase threatened to issue notices of default, then later recorded a notice of default when the Dunnes were not in default.  This is sufficient pleading to survive Chase's Motion.

A. **Chase Assumes Incorrectly that Its False Reporting to Credit Agencies Cannot Establish Liability for Breach of Contract.**

In support of their breach of contract claim, the Dunnes allege in their 3AC that Chase falsely disclosed to credit reporting agencies that the Dunnes had failed to make timely payments on the Loan, which had been paid in-full at the time of the disclosures.  Chase contends that this cannot support a cause of action for breach of the implied covenant because the 3AC "fails to hinge Chase's reporting of the Dunnes' loan payment history to credit ratings agencies to any express contractual term."

Section 15.3 reads: "<u>Disclosure:</u> Lender may reveal and distribute terms of the Loan and payment information *consistent with Lender's credit reporting practices* and/or whenever Lender determines that a suitable request for a credit rating has been received." (emphasis added). Thus, pursuant to section 15.3 of the CLA, Chase has the express, contractual right to distribute credit information consistent with its own credit reporting practices. It is inconceivable that Chase has developed a corporate policy and practice of fraudulently reporting false information to credit reporting agencies. If it is shown, after the opportunity to conduct discovery, that Chase disregarded the express provisions of the CLA and disregarded its own corporate policies with respect to credit reporting, then Chase is potentially liable for breach of contract.

## V.   CHASE ASSUMES INCORRECTLY THAT THE DUNNES CANNOT ESTABLISH IMPLIED WAIVER.

Waiver is a question of fact. *Black v. Arnold Best Co.,* 124 Cal. App. 2d 378, 384-385 (1954). It is an intentional relinquishment of a known right. *Henderson v. Drake,* 42 Cal. 2d 1, 5 (1953). It may be implied through conduct manifesting an intention to waive. *Johnson v. Kaeser,* 196 Cal. 686, 699 (1925). Acceptance of benefits under a contract is conduct that supports a finding of waiver. *Salton Community Services Dist. v. Southard*, 256 Cal. App. 2d 526, 533 (1967). This is true even if the contract contains an antiwaiver provision. *Gould v. Corinthian Colleges, Inc.,* 192 Cal. App. 4th 1176 (2011) ("*Gould*").

Chase assumes incorrectly that the Dunnes cannot avoid dismissal "by arguing that Chase implicitly waived their Defaults under the CLA" because the CLA contained an antiwaiver provision.

*Gould* is instructive. The contract at issue in *Gould* provided for a security deposit. *Id*. at 1178. The contract further provided that no part of the security deposit was considered to be prepayment for any monies to be paid by the Lessee under the contract. *Id*. The contract also contained an early termination provision, which would be satisfied upon the Lessee meeting four conditions. *Id*. The one condition that was allegedly not satisfied was condition 4, which required the Lessee to pay the Lessor a sum of money "in cash or immediately available funds" on or before the early termination date. *Id*. The Lessee paid roughly $256,000 towards the required sum, but applied $16,000.00 of the security deposit. *Id*. The Lessor responded by letter, asserting that the Lessee breached the contract by applying a portion of the security deposit to the termination payment. *Id*. The Lessor did not tender return of the early termination payments received. *Id*.

The trial court found that applying a portion of the security deposit satisfied the requirement that payment be made in "cash or immediately available funds," that Lessee substantially complied, and that Lessor waived any noncompliance by keeping the early termination payments. *Id*. at 1179.

Before the Court of Appeal was the question of whether the Lessor of commercial property waived compliance with the terms of the contract by accepting and keeping all payments despite an express antiwaiver provision in the contract. *Id*. at 1179-1180.

Lessor contended on appeal that Lessee forfeited its right to early termination, pointing out that the contract provided that the security deposit cannot be considered as prepayment for any monies to be paid by Lessee under the contract. *Id.* The Court of Appeal disagreed, noting that Lessor accepted and retained the benefit of the payments, and that Lessor cannot now claim that Lessee forfeited the right to the early termination that the payments were intended to provide. *Id.* Lessor had waived any defect in Lessee's performance. *Id.*

Lessor then argued that the contract contained an express antiwaiver provision. *Id.* at 1180. Noting that Lessor cited no authority that an antiwaiver provision cannot itself be waived, the Court of Appeal found that Lessor waived strict performance of the early termination provision despite the provision. *Id.* It relied on the fact that Lessee had substantially performed, paying $256,000 of the $273,000 due for early termination, in addition to releasing approximately $16,000 of its security deposit. *Id.* The Court of Appeal noted: "For [Lessor] to keep the money and claim it does not constitute waiver is absurd, not to mention unconscionable." *Id.*

Here, the Dunnes contend in their 3AC that they have performed substantially under the CLA, and they have. When Chase underfunded the project, the Dunnes sold their Topanga Canyon property to "diligently pursue" completion of the project. When Chase accelerated the Loan without just cause, the Dunnes obtained a second loan from Cathay Bank to satisfy their obligations under the CLA. Chase accepted the Dunnes' payment in full. No money is owed to Chase.

THE DUNNES' OPPOSITION TO CHASE BANK'S MOTION TO DISMISS THE DUNNES' THIRD
AMENDED COMPLAINT

But before that final payment, Chase continuously led the Dunnes to believe that it was going to perform under the contract by funding draw requests fully and on time. Yet each draw request resulted in Chase withholding necessary funds unreasonably and with no explanation. Now, almost 5 years to the day after executing the CLA, Chase argues that the Dunnes' defaulted on the Loan by not obtaining the necessary permits to commence construction within 30 days of execution—a fact Chase knew, or should have known, was disclosed to Chase by virtue of the Dunnes' conversation with Jaffe. Chase further contends that its express antiwaiver provision in the CLA establishes as a matter of law that Chase's continuous funding of draw requests is inconsequential to a determination of default under the CLA. This issue cannot be decided as a matter of law because California law is clear: waiver is a question of fact. So is the question of whether waiver may be implied through conduct manifesting an intention to waive. Chase is trying to bar the Dunnes from discovering and presenting evidence of waiver prematurely. The court should deny Chase's 12(b)(6) motion.

## CONCLUSION

For the foregoing reasons, the Dunnes' respectfully request that the Court deny Chase's Motion in its entirety. Alternatively, if the Court is concerned with the adequacy of the Dunnes' pleading, the Dunnes respectfully request the opportunity to amend their complaint.

THE DUNNES' OPPOSITION TO CHASE BANK'S MOTION TO DISMISS THE DUNNES' THIRD
AMENDED COMPLAINT

DATED:  March 10, 2014          **COHEN McKEON LLP**
                                **LAW OFFICE OF STEVEN M. KLUGMAN**


                                By:   S/MICHAEL L. COHEN
                                      Michael L. Cohen
                                      Attorney for Plaintiffs,
                                      KEVIN J. DUNNE &
                                      CATHERINE M. DUNNE

THE DUNNES' OPPOSITION TO CHASE BANK'S MOTION TO DISMISS THE DUNNES' THIRD
AMENDED COMPLAINT

CERTIFICATE OF SERVICE

The undersigned hereby certifies that I am over the age of eighteen (18) and not a party to the within action. I am employed in the law firm of Cohen McKeon LLP, 1910 West Sunset Boulevard, Suite 440, Los Angeles, California 90026.

On March 10, 2014, I used the Central District of California's Electronic Case Filing System, with the ECF account registered to Michael L. Cohen, to file the following document(s):

THE DUNNES' OPPOSITION TO CHASE BANK'S MOTION TO DIMSISS THE DUNNES' THIRD AMENDED COMPLAINT

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service. The Parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 10, 2014, at Los Angeles, California.


/S/ ROBIN GRIER
Robin Grier

THE DUNNES' NOTICE OF MOTION& MOTION FOR LEAVE TO FILE THIRD AMENDED
COMPLAINT; SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES